FAX or Internet

# UNITED STATES DISTRICT COURT
## for the
## District of Arizona

In the Matter of the Search of

**505 Canyon View Drive
Peach Springs, Arizona 86434**

) 
) 
) Case No. 22-4089 MB
) 
)

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer.

An electronic application by a federal law enforcement officer for the government requests the search of the following person or property located in the _____ District of Arizona
*(identify the person or describe the property to be searched and give its location):* **See Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal: **See Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before _____March 31, 2022_____
*(not to exceed 14 days)*

[X] in the daytime 6:00 a.m. to 10 p.m.    [ ] at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
**Any magistrate judge in the District of Arizona**
*(Name)*

[ ] I find that immediate notification may have an adverse result as specified in 18 U.S.C. § 3103a  (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* [ ] for _____ days *(not to exceed 30).*
[ ] until, the facts justifying, the later specific date of _____

Date and Time Issued: _____    **Camille D. Bibles** Digitally signed by Camille D. Bibles
Date: 2022.03.17 18:54:50 -07'00'
*Judge's Signature*

City and State:    Flagstaff, Arizona    Camille D. Bibles, United States Magistrate Judge

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

  I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                     _____
                     *Executing Officer's Signature*

                     _____
                     *Printed Name and Title*

FAX or Internet

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:

**505 Canyon View Drive
Peach Springs, Arizona 86434**

)
)   Case No. 22-4089 MB
)
)

(Original To Be Filed With Court)

## ELECTRONIC APPLICATION FOR SEARCH WARRANT

I, the undersigned, a federal law enforcement officer, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on and within the following person or property:
**See Attachment A.**
located in the _____ District of _____ Arizona _____, there is now concealed:
**See Attachment B.**
The basis for the search under Fed. R. Crim. P. 41(c) is:

[X] evidence of a crime;

[X] contraband, fruits of crime, or other items illegally possessed;

[X] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Sections | Offense Descriptions |
|---|---|
| 18 U.S.C. 113(a)(3) | Assault with a Dangerous Weapon – Indian Country |
| 18 U.S.C. 113(a)(7) | Assault Resulting In Substantial Bodily Injury – Indian Country |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice of _____ days (give exact ending date if more than 30 days) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by: */s AUSA Paul Stearns*
**Pursuant to 28 U.S.C. §1746(2), I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: March 17, 2022

_____
*Applicant's Signature*

Christopher Moore, Detective, HNPD
*Printed Name and Title*

___X___ Sworn by Telephone
Date/
Time:

Camille D. Bibles   Digitally signed by Camille D. Bibles
Date: 2022.03.17 18:54:22 -07'00'
*Judge's Signature*

City and State:   Flagstaff, Arizona

Camille D. Bibles, United States Magistrate Judge
*Printed Name and Title*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## ELECTRONICALLY SUBMITTED REDACTED AFFIDAVIT

Your affiant, Christopher Moore, a Commissioned Law Enforcement Officer with the Hualapai Nation Police Department, states under oath as follows:

1. Your affiant is employed by the Hualapai Nation Police Department (HNPD) in Peach Springs, Arizona. Your affiant is assigned as a Criminal Investigator within the Hualapai Indian Reservation. Your affiant is a graduate of the Federal Law Enforcement Training Center for the Criminal Investigator Training Program. Your affiant holds the Special Law Enforcement Commissioned certification through the Bureau of Indian Affairs. Your affiant is also a graduate of the Arizona Law Enforcement Academy, where he obtained his status as a Certified Peace Officer. Your affiant has 14 years law enforcement experience with the Hualapai Nation Police Department.

2. The information contained in this affidavit is from my personal knowledge, training, experience, as well as information provided by other law enforcement officers listened herein. Because this affidavit is being made to establish probable cause, your affiant has not listed every fact known regarding this investigation. Your affiant has set forth only the facts necessary to establish probable cause to support the issuance of the requested search warrant.

## Introduction

3. This case involves an assault with a dangerous weapon (a hammer or similar blunt instrument) resulting in substantial bodily injury by Roy CROZIER ("CROZIER"), who is an Indian male. The victim of the assault is an adult Indian (Hualapai) female with the initials D.M.S.

4. The assault is believed to have occurred at 505 Canyon View Drive, Peach Springs, Arizona, which is within the confines of the Hualapai Indian Reservation (Indian Country) in the District of Arizona.

5. According to the United States Department of Interior, BIA Federal Register, the Hualapai Indian Reservation is a federally recognized Indian tribe. The assault occurred in Indian Country.

6. This affidavit is submitted in support of an application for a search warrant to search the address of 505 Canyon View Drive, Peach Springs, Arizona, 86434, in order to retrieve any evidence pertaining to violations of Title 18, United States Code 113(a)(3), Assault with a Dangerous Weapon, and of Title 18 United States Code 113(a)(7), Assault Resulting in Substantial Bodily Injury, that occurred on or near the address of 505 Canyon View Drive. The residence to be searched is further described in Attachment A, and the things to be searched for and seized are particularly described in Attachment B.

## Investigation/Probable Cause

7. On or about March 17, 2022, Hualapai Nation Police Department (HNPD) officers were dispatched to the main Hualapai Nation Fire Department Station, located on Hualapai Way, for a report of a female who arrived at the station to report that she was assaulted.

8. Sergeant Bryan Demke (Sgt. Demke) arrived at the fire stations and briefly spoke with D.M.S., who provided him with the following information:

   i. D.M.S. and CROZIER were at the residence with Sharae Paya, and they were "drinking" (referring to alcoholic beverages).

   ii. D.M.S. and CROZIER got into a verbal argument. Without provocation, CROZIER struck D.M.S. on the side of the head with a hammer.

   iii. D.M.S. stated she believed she lost consciousness for possibly a few hours.

   iv. When asked where CROZIER was currently located, D.M.S. stated she believed he was still at the residence of 505 Canyon View Drive.

9. D.M.S. was being placed into an ambulance for transport to Kingman Regional Medical Center, and Sgt. Demke went to the residence of 505 Canyon View Drive in an attempt to contact CROZIER.

10. Sgt. Demke knocked on the door and no one appeared to be home. Sgt. Demke stayed at the residence to secure the scene until a search warrant could be obtained.

11. Your affiant was notified of D.M.S. being transported to Kingman Regional Medical Center, located at 3269 Stockton Hill Road, Kingman, Arizona.

12. Your affiant responded to Kingman Regional Medical Center to conduct a follow-up interview with D.M.S. D.M.S. provided the following information:

   i. D.M.S. described that she is in a dating/intimate relationship with CROZIER, and she has been in that relationship with CROZIER since approximately April of 2021. She said that they had been residing together since about December of 2021.

   ii. At about 2:30 AM on March 17, 2022, D.M.S. woke up and she started drinking "whiskey" with CROZIER and Sharae PAYA while they were sitting on the bed in the room D.M.S. and CROZIER share. (This bedroom was described as the last bedroom of the hall and the window looked out the front of the house.)

   iii. D.M.S. described CROZIER's behavior as strange. D.M.S. said that CROZIER was saying people were outside of the house, and that he knew there was a guy outside that had come over to "hook up" with D.M.S.

 iv. CROZIER suddenly slapped D.M.S. on the left side of her head/face, and Sharae then got in between D.M.S. and CROZIER.

 v. CROZIER then reached around Sharae and slapped D.M.S. on the right side of her head/face, causing D.M.S. to fall onto the bed.

 vi. D.M.S. believed Sharae pushed CROZIER onto the ground after the slaps.

 vii. D.M.S. said she heard what she believed to be the sound of a hammer being drug across the floor of the bedroom.

 viii. D.M.S. stated she then observed CROZIER standing at the edge of the bed holding what she believed was a hammer or similar blunt instrument. D.M.S.'s view was partially obstructed by her hair in her face.

 ix. D.M.S. then felt a sharp pain the on the right side of her head, and she said that blood started to cover her face.

 x. D.M.S. felt a second equally sharp pain on the left side of her head. When asked to describe the pain level, her quoted response was, "Gosh, the pain was so bad, I don't know how to describe it but my vision was all blurry."

 xi. D.M.S. believes Sharae told CROZIER that one of the children in the house was waking up, and that is what believed stopped CROZIER's attack.

xii. D.M.S. added that she was so scared to leave the house because CROZIER was "tripping out" and saying "crazy things." D.M.S. said that she was unsure of what other injuries would occur as this was not the first time CROZIER has assaulted her.

xiii. D.M.S. waited for some time until CROZIER was no longer paying attention, and she was able to flee from the residence and seek medical attention.

xiv. At the conclusion of the interview, D.M.S. was still in the Emergency Department of Kingman Regional Medical Center. Your affiant understood that she would be there for some time for additional testing/treatment.[1]

13. While your affiant was taking a photograph of the residence for Attachment A, your affiant observed a hammer that was protruding from a wooden support beam of the attached carport. Based on your affiant's training and experience, this is an unusual place to store a hammer. Thus, your affiant seeks permission to seize this hammer (as well as to search the residence for other bludgeons that may have been used to assault D.M.S.)

**Things to Be Searched for and Seized**

---

[1] It should be noted that D.M.S., who said she lives at the residence to be search and contributes to the household, gave HNPD permission to search the residence. However, D.M.S. said she did not have a key. When HNPD officers went to the residence, CROZIER was not present. While D.M.S. consented to the search, out of an abundance of caution, your affiant is seeking a search warrant for the residence described in Attachment A.

14. In this case, D.M.S. believes that CROZIER struck her with a hammer or some sort of bludgeon (e.g., blunt object). Thus, your affiant seeks to search the residence, including the carport and premises, for any bludgeon(s) (e.g., hammer) or weapon(s) (e.g., blunt objects) used in the assault, including any such bludgeons with blood, tissue, clothing fibers, or substances appearing to have blood, tissue, or clothing fibers on them, or bludgeons or weapons in close proximity to any apparent blood evidence. Based on your affiant's training and experience, it would be unusual for something like a hammer to have tissue, clothing fibers, or blood (or blood-like substances on them). It should be noted that sometimes DNA evidence cannot be observed with the human eye, and that detection may require laboratory examination. Thus, your affiant would seek to collect any bludgeons in the residence and/or on the premises that appear to be out of place (i.e., not in a toolbox or with other tools) or hidden, as well as any bludgeons located in the bedroom(s).

15. Based on your affiant's training and experience, it is known that assaults where blunt force trauma is used to injure (or kill) the victim will create DNA evidence that may be left at the scene of the assault. For example, when someone is struck with something like a hammer – with enough force to cut or even kill the victim – blood, tissue, and hair, as well as clothing and/or clothing fibers, may be splattered with blood or other DNA evidence and/or spread about the area where the assault took place. Based on your affiant's training and experience, it is known that such evidence may last for years, particularly if imbedded or splattered on a piece of furniture (such as

mattress or bedding), on the carpet or flooring, on a towel, or on the walls. Blood may soak into such items. Even after drying, blood can be detected and later analyzed in a laboratory setting. Based on your affiant's training and experience, forensic evidence as described above can be very useful in the prosecution of crimes such as assault and murder, as such evidence may support where the incident occurred and potentially who was involved in such crimes.

16. In this case, the victim had at least one laceration and there was a significant amount of lost blood. Thus, it is believed that there is blood and/or other DNA in the residence to be searched. As such, your affiant seeks permission to search the residence for DNA evidence including blood, hair, and/or tissue), as well as clothing and/or other items (e.g., towels, bedding) with blood or apparent blood on them.

17. Your affiant seeks permission to search for any whiskey, whiskey bottles, or glasses containing or appearing to contain whiskey, as such evidence will corroborate statements made by the victim. Additionally, such containers can be checked for latent fingerprints.

18. Additionally, based on your affiant's training and experience, it is also known that indicia of ownership and/or occupancy is important in a criminal case. Such information may help establish (among other things) potential suspects and potential witnesses. It also can establish or help establish possession or control of the premises, knowledge, and intent. Based on your affiant's training and experience,

indicia of ownership and occupancy includes such things as: mail (*e.g.*, bills) showing a person's address; ownership documents such as deeds, tax documents, or bills of sale; leases or rental documents; identification cards; and photographs of the owners and/or occupants at or within the house or residence.

19. The things to be searched for and seized from the residence are further described in Attachment B.

20. Based upon your affiant's training, experience, and observations, your affiant submits that there is probable cause to believe that violations of federal law have occurred and that there is evidence of those violations – specifically Title 18, United States Code, Sections 113(a)(3) and 1153 and Title 18, United States Code, Sections 113(a)(7) and 1153 – in the form of (among other things) blood and or weapons.

///////

21. Your affiant respectfully requests that a search warrant be issued for the residence described in Attachment A for the things particularly described in Attachment B.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

_____
Christopher Moore, Detective
Hualapai Nation Police Department

March 17, 2022
Executed on (Date)

_X_ Sworn by Telephone


Date/Time: _____

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2022.03.17 18:53:46 -07'00'

CAMILLE D. BIBLES
United States Magistrate Judge

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

**Address:** 505 Canyon View Drive, Peach Springs, Arizona 86434, in the District of Arizona, including the residence (inside and out), porch, and curtilage around the residence.

**Description:** The residence to be searched is a single-family dwelling with a white brick exterior and a blue asphalt shingle roof. The numbers "505" are affixed to the right of the front door. The house faces East onto Canyon View Drive.

**Photograph:** See below.



## ATTACHMENT B
## THINGS TO BE SEARCHED FOR AND SEIZED

1. Any bludgeon (e.g., hammer, shovel) or weapon(s) (e.g., blunt object) in the bedroom(s); any bludgeons with blood, tissue, clothing fibers, or substances appearing to have blood, tissue, or clothing fibers on them; any bludgeon(s) or weapons that appear as if they were hidden or out of place; and any bludgeons or weapons in close proximity to any apparent blood evidence.

2. Any evidence of an assault (with physical contact), including specifically DNA evidence such as blood evidence, dried blood, substances that appear to be blood, tissue (e.g., skin), and/or hair, which may be on the floors, walls, clothing, bedding, furniture, or items used to clean up same (such as cloth towels, washcloths, or paper towels).

3. Any bottles or glasses containing whiskey or appearing to be whiskey, including any bottles of whiskey, empty bottles of whiskey, or glass(es) of whiskey in the bedroom(s).

4. Indicia of occupancy and/or ownership of the residence, including mail (*e.g.*, bills) showing a person's address; ownership documents such as deeds, tax documents, or bills of sale; leases or rental documents; identification cards; and photographs of the owners and/or occupants at or within the house or residence.

5. Photographs of the residence and the things seized.